476 F.2d 225
 5 Fair Empl.Prac.Cas. 793, 5 Empl. Prac. Dec. P 8530
Victoria Lamonte ESLINGER, for herself and for all other
women similarly situated, Appellants,
v.
Lovick Oliphant THOMAS, as Clerk of the Senate of South
Carolina, Erle Elias Morris, Jr., as President ex officio of
the Senate of South Carolina, and as a representative of the
Senators of South Carolina, Appellees.
 No. 72-1542.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 5, 1972.
Decided March 28, 1973.
 
 Laughlin McDonald, Columbia, S. C. (Charles Morgan, Jr., Norman Siegel, Emily Carssow, Morris Brown and Neil Bradley, Atlanta, Ga., on brief), for appellants.
 Randall T. Bell, Asst. Atty. Gen., and E. N. Zeigler, Florence, S. C. (Daniel R. McLeod, Atty. Gen., Hubbard W. McDonald, Jr., Asst. Atty. Gen. of South Carolina, and Paul M. Moore, Spartanburg, S. C., on brief), for appellees.
 Before WINTER, CRAVEN and FIELD, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Victoria Lamonte Eslinger sued for herself and other women similarly situated, alleging that she had been denied temporary employment as a page in the South Carolina Senate solely because of her sex.[1] She prayed declaratory and injunctive relief on behalf of all temporary and permanent employees, as well as damages. The district court found as a fact that there was no discrimination on the basis of sex with regard to permanent employees. Although it found that employment as a page was denied her solely because of her sex, the district court denied her any relief. Eslinger v. Thomas, 340 F.Supp. 886 (D.S.C. 1972). In large part, we disagree and remand with directions to grant equitable relief.
 
 I.
 
 2
 In November, 1970, plaintiff, a law student at the University of South Carolina, was recommended by a South Carolina state senator for appointment as a page for the senate for the 1971 session of the South Carolina General Assembly -a species of temporary employment. Subsequently, defendant Thomas, Clerk of the Senate, informed her that she could not be employed as a page because she was female. Her informal appeals to the Governor and Lieutenant Governor of South Carolina failed, as well as her sponsoring senator's intercession with the clerk.
 
 
 3
 The district court found that, at the time plaintiff sought employment, pages were usually college students and a large number were law students at the University of South Carolina Law School. Pages performed various duties assigned by senators, the clerk and other employees of the senate, including running errands, both personal and official, for senators, preparation and distribution of Acts, proofreading, indexing, bookkeeping, obtaining food and drink for the senators, assisting with committee records, relaying messages to senators, attending committee meetings, acting as assistants and helpers to clerks of various committees, and otherwise taking care of senators' needs.
 
 
 4
 Pages are temporary employees; they work only for the months the senate is in session. The positions are quite attractive to students. Although they are not overpaid, working hours are not long, working hours may be adjusted to suit the convenience of the employee, and pages have the opportunity to view the lawmaking process and to meet state officials.
 
 
 5
 Suit was filed in February, 1971. Several months thereafter, the South Carolina Senate adopted Resolution S. 525, establishing new classifications and duties of part-time employees formerly known as pages.[2] Under this resolution, females may be employed as "clerical assistants" and "committee attendants," but not as "Senate pages." As a condition of employment, a female is also required to furnish a written statement from her parent or guardian assuming responsibility for her transportation, safety and supervision to and from her local residence and the senate and at her local residence. At the time of trial, three women had been employed pursuant to this resolution, but plaintiff did not apply for such employment, insisting on her right to be a "Senate page."
 
 
 6
 After finding that the suit was not barred by the eleventh amendment, the district court found that defendants Morris, the Lieutenant Governor of South Carolina and President ex-officio of the Senate of South Carolina, Brown, the President Pro Tempore of the Senate, and all other senators were immune from suit as state legislators under the speech or debate clause (Art. I, Sec. 6, cl. 1, U.S.Constitution). The Clerk of the Senate, defendant Thomas, was held not immune from suit under that clause. The district court determined that the custom of the South Carolina Senate to deny females positions as pages, prior to the adoption of Resolution S.525, denied plaintiff her "Constitutional right to seek employment and be employed." The district court concluded, however, that the constitutional rights of female citizens were not violated by the superseding provisions of S.525, and that the prohibition against females running personal errands for senators (one practical effect of the resolution) was not shown to be "arbitrary or wanting in rational justification."
 
 
 7
 In addition, the district court found that the claim for monetary damages against Morris and Brown was barred under the speech or debate clause; the clerk was found not liable for damages because he acted in good faith.
 
 
 8
 Finally, the district court found that the senate did not discriminate on the basis of sex with regard to permanent employees. Although the contention that such discrimination existed was not abandoned on appeal, it was not vigorously pressed; and since our examination of the record demonstrates that the finding was not clearly erroneous, we will not consider the issue further.
 
 
 9
 For the reasons stated below, we agree that damages are not recoverable by plaintiff, but we think that she and the class she represents are entitled to declaratory and equitable relief.
 
 II.
 
 10
 It is clear that the Lieutenant Governor, the President Pro Tempore and all state senators joined as defendants in this suit are immune from suit, and liability for damages. The protection of the speech or debate clause of the Constitution of the United States has been extended to state legislators. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). The scope of the privilege granted is not unlimited, but a senate resolution is protected to the same degree as words spoken in actual debate. Gravel v. United States, 408 U.S. 606, 617, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). The passing of acts and resolutions is the very essence of the legislative process, and any attempt to punish a legislator for such actions would manifestly tend to "control his conduct as a legislator," in derogation of the clause. Gravel, supra at 618, 92 S.Ct. at 2623. See United States v. Johnson, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966); Dombrowski v. Eastland, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967); Tenney v. Brandhove, supra.
 
 
 11
 We reject plaintiff's argument that defendants waived their immunity under the speech or debate clause by their failure to allege it formally in their answers to the complaint and amended complaint. The issue was raised during trial. All parties requested and were given leave to file post-trial memoranda. While we do not have their briefs in the record, we presume that they discussed the issue, because it was a basis of decision by the district court. In any event, both the possibility and validity of an immunity defense in this case were apparent from the beginning, and plaintiff has shown no prejudice as a result of the timing of assertion of the defense. We can only conclude that assertion of the defense was sufficiently timely that it should be considered and where, as here, it is meritorious, it should be sustained.
 
 
 12
 The clerk was acting in good faith and, we agree, should not be liable for damages. His position was not unlike that of the Board of Visitors of the University of Virginia, whose actions in maintaining an all male state college did not subject them to liability under Sec. 1983:
 
 
 13
 The defense of official immunity should be "applied sparingly in suits brought under Sec. 1983" . . .. Nevertheless, it should be available to public officials who act in unquestioned good faith and in perfect accord with long standing legal principle only to find their discretionary conduct declared illegitimate under a later constitutional interpretation. In an analysis of the immunity doctrine, Judge Learned Hand stated that its purpose is to encourage conscientious public officials by not "exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors" . . .. The admissions policy formulated by the University Board of Visitors and acquiesced in by the other defendants was in contravention of no clear constitutional principle when adopted. We hold that plaintiffs are not entitled to damages under Sec. 1983.
 
 
 14
 Kirstein v. Rector and Visitors of University of Virginia, 309 F.Supp. 184, 189 (E.D.Va. Three-Judge Court, 1970).
 
 
 15
 Although the clerk may have acted with little sensitivity to a swelling tide of legal and social precedent rapidly eroding the bastion of male chauvinism, he acted in the light of a long-standing, albeit vaguely defined, "custom" of the South Carolina Senate barring female pages. He did no more, or less, than what had always been done. "While high state officials may be expected to be reasonable men, they neither can nor should be expected to be seers in the crystal ball of constitutional doctrine." Westberry v. Fisher, 309 F.Supp. 12, 17 (D.Me.1970). The clerk should not be "charged with predicting the future course of constitutional law." Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967).
 
 
 16
 Good faith alone may not always be enough to avoid liability for damages. Certainly there is nothing in Sec. 1983, or the fourteenth amendment to suggest that an improper motive is a requirement for a federal cause of action. Instead, Sec. 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). Thus, what defenses there are to a Sec. 1983 action are those that would exist in a parallel state common law tort action, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Jenkins v. Averett, 424 F. 2d 1228, 1233 (4 Cir. 1970); and only when good faith alone would be a sufficient defense to a tort, would it usually be a sufficient defense to a Sec. 1983 action based on that tort. Roberts v. Williams, 456 F.2d 819, 826 (5 Cir. 1971), cert. denied 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110 (1971).
 
 
 17
 A federal cause of action based on sex-discrimination has no deep commonlaw roots; rather, it emerges from recent enlightened approaches to what constitutes equal protection of the laws under the fourteenth amendment. Consequently, there exists in this case no well-defined common-law defense of good faith to adopt as a defense in the federal suit. Yet, as Kirstein, supra, points out, in the area of sex-discrimination, the inchoate state of legal guidelines suggest that good faith, coupled with reasonable grounds to believe one is acting within the law, should be sufficient to preclude liability for damages.[3] Properly applied, such a test, based on the circumstances of each case, maintains the effectiveness of Sec. 1983 actions while providing conscientious state officials with some protection against the cutting edge of a rapidly developing legal doctrine.
 
 
 18
 We are persuaded from our consideration of the record that, in fact, the clerk demonstrated a reasonable basis for his good faith actions and was justified in raising this defense to avoid monetary liability.[4] We sustain it.
 
 III.
 
 19
 Although Thomas is immune from damages, by virtue of his being a legislative employee, he is not immune from suit and the grant of equitable relief. Legislative employees who participate in unconstitutional activity are responsible for their acts. Dombrowski v. Eastland, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967); Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). Thus, we turn to the merits of the claim for equitable relief.
 
 
 20
 Our starting point is the district court's finding, which was not clearly erroneous, that "plaintiff was denied employment as a temporary employee of the Senate of South Carolina at the beginning of the January, 1971 Session solely because of her sex." Plaintiff's challenge to the employment practices of the South Carolina Senate is grounded primarily on the equal protection clause of the fourteenth amendment. She urges us to find sex a "suspect classification," which would require "close judicial scrutiny" of a governmental action based upon such a classification, see, e. g., Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).
 
 
 21
 Until recently an argument that a classification based upon sex violated the equal protection clause bore little chance of success.[5] However, in Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L. Ed.2d 225 (1971), the Court struck down a classification based upon sex, holding invalid an Idaho statute which gave a mandatory preference to a male over a female for appointment as administrator of an estate when both were equally qualified and within the same entitlement class. In describing the test of validity, the Court said:
 
 
 22
 The Equal Protection Clause [denies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike . . ." [citation omitted]. The question presented by this case, then, is whether a difference in the sex of competing applicants for letters of administration bears a rational relationship to a state objective that is sought to be advanced by the operation of [the statute]. (emphasis supplied).
 
 
 23
 404 U.S. at 75-76, 92 S.Ct. at 253-254.
 
 
 24
 Thus Reed, in a case of invidious sex discrimination, prescribed as a test of validity the presence of a "fair and substantial" relation between the basis of the classification and the object of the classification. A classification based upon sex is less than suspect;[6] a validating relationship must be more than minimal.[7] What emerges is an "intermediate approach" between rational basis and compelling interest as a test of validity under the equal protection clause. Green v. Waterford Board of Education, 473 F.2d 629 (2 Cir. 1973); Wark v. Robbins, 458 F.2d 1295, 1297 n. 4 (1 Cir. 1972); Gunther, The Supreme Court, 1971 Term. Foreward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L.Rev. 1, 17 (1972).
 
 
 25
 When we apply the test of Reed, we are compelled to conclude that S.525 denies equal protection. The "public image" of the South Carolina Senate and of its members is obviously a proper subject of state concern. Apparently, the South Carolina Senate felt that certain functions performed by pages on behalf of senators, e. g. running personal errands, driving senators about in their autos, packing their bags in hotel rooms, cashing personal checks for senators, etc., were "not suitable under existing circumstances for young ladies and may give rise to the appearance of impropriety." Resolution S.525, n. 2, supra. In their brief, defendants argue that "[i]n placing this restriction upon female pages, the Senate is merely attempting to avoid placing one of its employees in a conceivably damaging position, protecting itself from appearing to the public that an innocent relationship is not so innocent, and maintaining as much public confidence while conducting the business of the people of South Carolina as possible."
 
 
 26
 We find this rationale unconvincing. It rests upon the implied premise, which we think false, that "[o]n the one hand, the female is viewed as a pure, delicate and vulnerable creature who must be protected from exposure to criminal influences; and on the other, as a brazen temptress, from whose seductive blandishments the innocent male must be protected. Every woman is either Eve or Little Eva-and either way, she loses." Johnson and Knapp, Sex Discrimination By Law: A Study in Judicial Perspective, 46 N.Y.U.L.Rev. 675, 704-5 (1971). See also, Seidenberg v. McSorley's Old Ale House, Inc., 317 F. Supp. 593, 600 (S.D.N.Y.1970); Sail'er Inn, Inc. v. Kirby, 5 Cal.3d 1, 95 Cal. Rptr. 329, 485 P.2d 529 (1971). We have only to look at our own female secretaries and female law clerks to conclude that an intimate business relationship, including traveling on circuit, between persons of different sex presents no "appearance of impropriety" in the current age, graduated as we are from Victorian attitudes. We note also that South Carolina has had female senators. While the record does not reflect their ages, the association of female senator with male page has not given rise to a sufficient "appearance of impropriety" to require legislative regulation which is the reverse of S.525. In short, present societal attitudes reject the notion that, in most forms of business endeavor, free association between the sexes is to be limited, regulated and restricted because of a difference in sex.[8]
 
 
 27
 The requirements of S.525 of a written statement from the female's parent or guardian assuming responsibility for her transportation, safety and well-being and for her "strict supervision"[9] stand on no firmer ground. Adult females, or nearly adult females, are no longer chattels of their husbands or parents. If they are tendered and accept special protection or special courtesies, there is no violation of right; but unwelcome special protection, especially denial of employment opportunity, foisted upon them is counter to modern law and modern social thinking. We do not question the right of the Senate of South Carolina to make such regulations and to exercise such control as it may think appropriate in keeping with its sense of propriety as to the duties of all pages, male and female. But such regulation and control must be kept within the bounds of the Constitution. The latter does not permit denial of employment opportunity to female pages because they are female.
 
 
 28
 Since we can find no "fair and substantial" relation between the object of S.525 (combatting the "appearance of impropriety") and the ground of difference (sex) upon which the classification rests, we reverse with regard to the denial of declaratory and injunctive relief and remand the case for further proceedings.[10]
 
 
 29
 Affirmed in part; reversed in part; costs awarded to plaintiff.
 
 
 
 [1]
 Suit was grounded on the fourteenth amendment and 42 U.S.C.A. Secs. 1983 and 1988. The district court was vested with jurisdiction under 28 U.S.C.A. Sec. 1343(3) and (4) and 42 U.S.C.A. Secs. 1983 and 1988
 
 
 [2]
 A SENATE RESOLUTION RELATING TO CLASSIFICATION OF SOME PART-TIME EMPLOYEES AND CERTAIN RESPONSIBILITIES RELATING TO THEIR EMPLOYMENT
 Whereas, the Senate desires to create reasonable classification of some parttime employees heretofore generally known as pages; and
 Whereas, applicants for these part-time positions must be sponsored by a Senator and the final selection of these applicants is a prerogative of the Senators, subject to such rules and regulations as the Clerk of the Senate shall prescribe; and
 Whereas, it is the sense and judgment of the Senate that certain functions performed by pages in personal attendance upon the Senators and in the performance of personal errands for Senators while the Senate is in session are not suitable under existing circumstances for young ladies and may give rise to the appearance of impropriety; and
 Whereas, recent renovations in the State House have provided additional office space for routine clerical and committee functions; and
 Whereas, some routine clerical and committee duties may be appropriately performed by young ladies; and
 Whereas, the Senate wishes to establish reasonable classifications and responsibilities for the filling of these positions according to the duties required, with reasonable restrictions.
 Now, therefore,
 Be it resolved by the Senate of the State of South Carolina:
 That the following classifications of some part-time employees are:
 
 
 [1]
 Senate pages, whose primary duties shall be assisting the regular high school pages (three) in performing the various errands and duties as requested by the Senators, President and clerks, shall be male students
 
 
 [2]
 Clerical assistants, whose primary duties shall be posting of records or indexing, bookkeeping, preparation and distribution of temporary acts and proofreading, may be female students
 
 
 [3]
 Committee attendants, whose primary duties shall be answering telephones, assisting with committee records, relaying of messages to Senators attending committee meetings, and other duties assigned by the Chairman, may be female students
 Be it further resolved that no female student nominated by a Senator to one of these positions classified herein shall be appointed until the Senator files with the Chairman of the Rules Committee of the Senate a written statement, accompanying such appointment, from the parent or guardian of the female student concerned that such parent or guardian:
 (1) Will be responsible for the safe transportation of the female student between the Senate and the female student's place of local abode, and return; and
 (2) Will assume full responsibility for the safety, well-being and strict supervision of such female student while she is in her place of local abode.
 The Rules Committee of the Senate shall hear and report to the Senate complaints concerning the refusal of appointment of Senate pages, committee attendants and clerical assistants by the Senators nominating them, and the failure of a Senator promptly to make complaint to the Rules Committee shall be deemed to be a withdrawal of the nomination giving rise to the complaint.
 
 
 [3]
 Where good faith as a defense to damages is permitted, it is unnecessary to give any consideration to the significant issue of whether the eleventh amendment bars the granting of monetary damages against a state officer sued in his official capacity. Compare Rothstein v. Wyman, 467 F.2d 226 (2 Cir. 1972); Like v. Carter, 353 F.Supp. 405 (D.E.Mo.1973); and Westberry v. Fisher, 309 F.Supp. 12 (D.Me.1970) With Jordan v. Weaver, 472 F.2d 985 (7 Cir. 1973)
 
 
 [4]
 Plaintiff argues that in damage actions against public officials charged with an unconstitutional violation of property or contractual rights, courts have generally not adopted the defense of good faith, citing, inter alia, the back pay cases of Harkness v. Sweeny Independent School District, 427 F.2d 319 (5 Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971) and Smith v. Hampton Training School for Nurses, 360 F.2d 577, 581 (4 Cir. 1966). But, as these cases point out, a claim for back pay is not simply a claim for damages, but rather an integral part of the equitable remedy of reinstatement. No question of reinstatement is involved here, and the damage claim, although labeled as one for back pay, is independent from plaintiff's claim for injunctive relief to ban invidious sex classifications in the hiring of pages
 
 
 [5]
 Bradwell v. Illinois, 16 Wall. 130, 83 U.S. 130, 21 L.Ed. 442 (1873) (license to practice law); Muller v. Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908) (limitation on hours of work); Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948) (prohibiting employment as a bartender); Hoyt v. Florida, 386 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961) (absolute right of exemption from jury duty). But see Alexander v. Louisiana, 405 U.S. 625, 634, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972) (concurring opinion of Mr. Justice Douglas)
 
 
 [6]
 For a sex discrimination case espousing the concept of a "suspect classification," which requires a compelling state interest to sustain it, see Sail'er Inn v. Kirby, 5 Cal.3d 1, 95 Cal.Rptr. 329, 485 P.2d 529 (1971). See also, Note, Sex Discrimination and Equal Protection: Do We Need a Constitutional Amendment? 84 Harv. L.Rev. 1499 (1971); Johnson and Knapp, Sex Discrimination By Law: A Study in Judicial Perspective, 46 N.Y.U.L.Rev. 675, 686 (1971); United States ex rel. Robinson v. York, 281 F.Supp. 8, 14 (D. Conn.1968)
 
 
 [7]
 See, e. g., McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), "[t]he constitutional safeguard [the equal protection clause] is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective."
 
 
 [8]
 See Dahlstrom, ed., The Changing Roles of Men and Women (1967); Montagu, Man's Most Dangerous Myth 181-84 (4th ed. 1964); Myrdal, An American Dilemma 1073-78 (2d ed. 1962); Watson, Social Psychology: Issues and Insights 435-56 (1966); Murray & Eastwood, Jane Crow and the Law: Sex Discrimination and Title VII, 34 Geo.Wash.L. Rev. 232, 235-42 (1965)
 
 
 [9]
 This resolution was modeled on S.Res. 112, adopted by the United States Senate on May 13, 1971:
 Resolved, That no individual shall be denied appointment as a Senate page, elevator operator, or postoffice employee, or as a Capitol policeman whose compensation is disbursed by the Secretary of the Senate, solely on the basis of sex. In the case of Senate pages, however, until such time as the fireproof building containing dormitory and classroom facilities, as authorized by section 492 of the Legislative Reorganization Act of 1970, is constructed and the pages are living under appropriate supervision in such building, the Sergeant at Arms of the Senate shall promulgate and have in effect regulations for the appointment of pages of the Senate requiring that no female page shall be appointed by a Senator until the Senator files with the Sergeant at Arms a written statement accompanying such appointment that the Senator-
 (1) will be responsible for the safe transportation of the female page he appoints between the Senate and the page's place of local abode and return; and
 (2) will assume full responsibility for the safety, well-being, and strict supervision of such female page while such page is in her place of local abode.
 It is noteworthy that the U. S. Senate Resolution makes no distinction based on sex regarding employment of pages. The restrictions imposed on females are temporary in nature and they are not a fair indicator of decision here when one considers that U. S. Senate pages are of high school age while South Carolina Senate pages are usually college and law students.
 
 
 [10]
 Our resolution of this case suggests no departure from our recent holding in Cohen v. Chesterfield County School Board, 474 F.2d 395 (4 Cir., Jan. 18, 1973), rev'g 326 F.Supp. 1159 (E.D.Va. 1971). In Cohen, this Court applied the rational basis test to uphold a maternity leave regulation of the School Board against an equal protection attack. The majority concluded that the School Board regulation was "not an invidious discrimination based upon sex. It does not apply to women in an area in which they may compete with men," i. e., having children. In contrast, the selection process for jobs as senate pages is an area in which women could be very much in competition with men