**UNITED STATES of America**

v.

**Marvin MANDEL et al.**

**Crim. No. HM75–0822.**

United States District Court, D. Maryland.

May 4, 1976.

Jervis S. Finney, U. S. Atty. for the District of Maryland, Barnet D. Skolnik, Ronald S. Liebman and Daniel J. Hurson, Asst. U. S. Attys., Baltimore, Md., for the United States of America.

Arnold M. Weiner, Baltimore, Md., for Marvin Mandel.

William G. Hundley, Washington, D. C., for W. Dale Hess.

Thomas C. Green, Washington, D. C., for Harry W. Rodgers, III.

Michael E. Marr, Baltimore, Md., for William A. Rodgers.

Norman P. Ramsey, Baltimore, Md., for Irvin Kovens.

Joseph A. DePaul, College Park, Md., for Ernest N. Cory, Jr.

**HERBERT F. MURRAY, District Judge.**

In the motion to dismiss the indictment previously filed by defendant Mandel in this case, one of the grounds for dismissal urged was that defendant Mandel, as Governor, was entitled to invoke the doctrine of legislative immunity as a bar to the instant

prosecution. While the indictment referred to certain conduct, evidence of which arguably could have been privileged under the doctrine, the Court held in a Memorandum and Order filed March 23, 1976, that the general question of the applicability of the doctrine to the Governor need not be decided in light of the fact that the indictment also alleged conduct which was clearly beyond the protection of any legislative privilege and that the indictment therefore did not need to be dismissed.

It has since become apparent that to delay decision on the general question of the applicability of the privilege to the Governor until trial would unduly complicate trial procedures in a case that promises to be complex enough. Accordingly, the Court will decide the question at this time.

*The Doctrine of Legislative Immunity*

The principle of legislative freedom of speech and debate has its origins in England's seventeenth century struggle for parliamentary supremacy. By the time of the founding of our Republic, that freedom was "taken as a matter of course". *Tenney v. Brandhove,* 341 U.S. 367, 372, 71 S.Ct. 783, 786, 95 L.Ed. 1019, 1024 (1951). The framers of the federal Constitution specifically provided for freedom of speech and debate for members of Congress. Article I, Section 6 of the United States Constitution provides, in part, that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." Most states have incorporated in their own constitutions similar provisions applicable to members of state legislatures. Maryland's provision, found in Article 10 of the Maryland Declaration of Rights, in fact predates the federal provision.

The various state and federal constitutional provisions guaranteeing freedom of speech and debate in the legislature are specific codifications of the common law doctrine of legislative immunity. The doctrine has both substantive and evidentiary aspects. The substantive aspect of the doctrine affords legislators immunity from both civil[1] and criminal[2] liability arising from legislative acts such as speech or debate in legislative proceedings. The evidentiary aspect of the doctrine affords legislators a privilege to refuse to answer any questions concerning their legislative acts in any proceeding outside of the legislature.[3] In essence, the doctrine of legislative immunity operates both in civil and criminal proceedings to prevent inquiry into legislative acts or into the motivation for those acts; it precludes any showing of how a legislator voted, acted, or decided on matters within the sphere of legitimate legislative activity. *Tenney v. Brandhove, supra; United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972).

Immunity from civil liability for legislative acts is necessary to encourage the vigorous performance of legislative duties. Only if a legislator is shielded from civil proceedings which disrupt and question his performance of legislative duties can he fully apply his best efforts and attention to the legislative matters with which he is

---

1. *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975); *Doe v. McMillan,* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967); *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); *Kilbourn v. Thompson,* 103 U.S. 168, 26 L.Ed. 377 (1881); *McSurely v. McClellan,* 172 U.S.App.D.C. 364, 521 F.2d 1024 (1975); *Eslinger v. Thomas,* 476 F.2d 225 (4th Cir. 1973).

2. *Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); *United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972); *United States v. Johnson,* 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966); *United States v. Dowdy,* 479 F.2d 213 (4th Cir. 1973); *Blondes v. State,* 16 Md.App. 165, 294 A.2d 661 (1972).

3. Thus, while a legislator may not be immune from a criminal prosecution which does not call into question his legislative acts, nevertheless, those legislative acts are privileged and inadmissible as evidence, however relevant to the crime charged. *United States v. Brewster, supra; United States v. Craig,* 528 F.2d 773 (7th Cir. 1976), *petition for cert. filed 2/26/76 sub nom. Markert v. U. S.,* 44 USLW 3502.

entrusted. The need for civil immunity was spelled out by James Wilson, one of the members of the Committee of Detail responsible for the drafting of the Speech or Debate clause in the federal Constitution:

> In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of everyone, however powerful, to whom the exercise of that liberty may occasion offence.

II Works of James Wilson (Andrews ed. 1896), 38, quoted in *Tenney v. Brandhove, supra,* 341 U.S. at 373, 71 S.Ct. at 786, 95 L.Ed. at 1025.

■ To the degree that immunity from civil liability arising from legislative acts is designed to foster the vigorous performance of legislative duties, the doctrine of legislative immunity is but a branch of the doctrine of official immunity which has been judicially created to shield various government officials from disruptive civil lawsuits which call into question discretionary acts made in the course of official duty.[4] The purpose of the doctrine of official immunity is to serve the principle that

> officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties— suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

*Barr v. Mateo,* 360 U.S. 564, 569, 79 S.Ct. 1335, 1338, 3 L.Ed.2d 1434, 1440 (1959) quoted in *Doe v. McMillan,* 412 U.S. 306, 319, 93 S.Ct. 2018, 2028, 36 L.Ed.2d 912, 924 (1973). Thus, in cases where particular speech or debate provisions were not applicable to protect conduct arising in the legislative context, courts have applied the common law doctrine of legislative immunity as a part of the judicially-created doctrine of official immunity. *Tenney v. Brandhove, supra* (state legislators immune from damages in suit under civil rights statute); *Eslinger v. Thomas,* 476 F.2d 225 (4th Cir. 1973) [5]; *cf. Doe v. McMillan, supra,* 412 U.S. at 318–325, 93 S.Ct. at 2028–2031, 36 L.Ed.2d at 924 (official immunity of Public

---

**4.** *Barr v. Mateo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (absolute judicial immunity and qualified immunity for police officials acting with good faith and with probable cause); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (qualified immunity for Governor and executive officers of State); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (qualified immunity for school officials imposing discipline on students); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (absolute immunity for state prosecutors).

**5.** Defendant cites the case of *Eslinger v. Thomas* as authority for the proposition that the Speech or Debate Clause of the United States Constitution is directly applicable to state legislators. There is some language in *Eslinger* which at first blush might seem to lend some support to that proposition. *See* 476 F.2d at 228, where the Court stated:

> The protection of the speech or debate clause of the Constitution of the United States has been extended to state legislators. *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

*Tenney,* of course, is not a speech or debate clause case; it merely discusses the federal provision in the course of elaborating on the common law privilege of official immunity in the legislative context. That *Tenney* deals with a common law privilege, and not the federal speech or debate clause, has been clarified in Supreme Court decisions decided after *Eslinger v. Thomas.* *United States v. Brewster, supra,* 408 U.S. at 516 n. 10, 92 S.Ct. at 2539 n. 10, 33 L.Ed.2d at 520; *Doe v. McMillan, supra,* 412 U.S. at 320, 93 S.Ct. at 2028, 36 L.Ed.2d at 925; *Imbler v. Pachtman, supra,* 96 S.Ct. at 989, and 990 n. 15.

The language in *Eslinger* does not clearly say otherwise. It states only that the "protection" of the speech or debate clause—which, of course, was merely a codification of the doctrine of legislative immunity—was available to state legislators. In light of the more recent Supreme Court pronouncements on the scope of the *Tenney* decision, this Court will interpret the *Eslinger* decision as saying only that the Supreme Court has applied the doctrine of legislative immunity to state legislators acting within the sphere of legitimate legislative activity.

Printer and Superintendent of Documents for actions taken at direction of Congress extends only to same degree as Speech or Debate Clause protection).

 The doctrine of legislative immunity, unlike other forms of official immunity, also provides an extraordinary immunity from criminal liability arising from a legislative act. *See* note two, *infra.* The rationale for immunity from criminal liability stems from an even more fundamental purpose of the doctrine of legislative immunity: to preserve the independence of the legislature as a coequal branch of the government, free from executive or judicial intimidation or control. With the power to institute and prosecute criminal proceedings, the executive branch has a unique power to intimidate by threats of criminal prosecution members of the legislature whose political views or actions might displease the executive. Immunity from criminal prosecutions for legislative acts, which prevents "possible prosecution by an unfriendly executive and conviction by a hostile judiciary," *United States v. Johnson,* 383 U.S. 169, 179, 86 S.Ct. 749, 754, 15 L.Ed.2d 681, 687 (1966), is thus necessary to end any threat of potential abuse of the criminal process by the executive branch. Immunity from criminal liability for legislative acts is not designed for a legislator's "personal or private benefit", but rather to "protect the integrity of the legislative process by insuring the independence of individual legislators." *United States v. Brewster, supra* 408 U.S. at 507, 92 S.Ct. at 2535, 33 L.Ed.2d at 515.

> The Speech or Debate Clause was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive branch. It thus protects Members against prosecutions that directly impinge upon or threaten the legislative process.

*Gravel v. United States,* 408 U.S. 606, 615–16, 92 S.Ct. 2614, 2622, 33 L.Ed.2d 583, 597 (1972). Immunity from criminal liability also prevents a legislator from being held accountable before a "possibly hostile judiciary", *id.* at 617, 92 S.Ct. at 2623, 33 L.Ed.2d at 597, which, as a coequal branch of the government, is an inappropriate body to decide questions whether acts done within the sphere of legitimate legislative activities are proper. *Tenney v. Brandhove, supra,* 341 U.S. at 378, 71 S.Ct. at 789, 95 L.Ed. at 1027.

 To facilitate this "central role" of legislative immunity, *Gravel v. United States, supra,* 408 U.S. at 617, 92 S.Ct. at 2623, 33 L.Ed.2d at 597, courts have given speech or debate clauses a broad construction

> to implement [their] fundamental purpose of freeing the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator.

*Id.* at 618, 92 S.Ct. at 2623, 33 L.Ed.2d at 598. At the same time, the Supreme Court has also repeatedly affirmed the principle that the privilege should not be extended "beyond what is necessary to preserve the integrity of the legislative process". *United States v. Brewster, supra,* 408 U.S. at 517, 92 S.Ct. at 2540, 33 L.Ed.2d at 521. As the Court commented concerning its previous cases in the *Gravel* case, they

> reflect a decidedly jaundiced view towards extending the Clause so as to privilege illegal or unconstitutional conduct beyond that essential to foreclose executive control of legislative speech or debate and associated matters such as voting and committee reports and proceedings.

*Gravel v. United States, supra,* 408 U.S. at 620, 92 S.Ct. at 2625, 33 L.Ed.2d at 599. Thus, while the Court has not confined the Speech or Debate Clause to mere speech or debate in Congress, it has strictly limited the application of the privilege to legislative acts which are part of the *due* functioning of the legislative process. *United States v. Brewster, supra,* 408 U.S. at 515–516, 92 S.Ct. at 2539, 33 L.Ed.2d at 519. Insofar as the Clause is construed to reach matters other than speech and debate,

. . . they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel v. United States, supra,* 408 U.S. at 625, 92 S.Ct. at 2627, 33 L.Ed.2d at 602. The fact that a legislator may generally do something in the course of his duties does not render the act a legislative one for the purpose of immunity unless the act relates to the due functioning of the legislative process.[6]

█ The reason for the reluctance to extend legislative immunity beyond what is essential to maintain the independence of the legislature is readily understood. Since privileges by their very nature take from the trier of fact's consideration evidence which is frequently relevant, and are therefore considered to be in "derogation of the search for truth", *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974), the law sustains a claim of privilege only when necessary to protect and preserve the interest of significant public importance that the specific privilege is designed to serve. In the field of official immunity generally, the Supreme Court has "not fashioned a fixed, invariable rule" but has "advised a discerning inquiry into whether the contributions of immunity to effective government in particular contexts outweigh the perhaps recurring harm to individual citizens." *Doe v. McMillan, supra,* 412 U.S. at 320, 93 S.Ct. at 2028, 36 L.Ed.2d at 925. In the context of legisla-

tive immunity, the cases make it clear that the privilege will not be recognized where the relief sought by the suit would not threaten the independence of the legislature. *Gravel v. United States, supra,* 408 U.S. at 621, 92 S.Ct. at 2625, 33 L.Ed.2d at 600.

Thus, the question to be decided in this case is whether a failure to apply the privilege under the circumstances of this case would threaten the independence of the state legislature or the proper performance of the legislative duties of the Governor of Maryland conferred upon him by the state Constitution.

*The Governor's Claim of Legislative Privilege*

The indictment in the present case charges, *inter alia,* that it was a part of the scheme and artifice to defraud in violation of the mail fraud statute, 18 U.S.C. § 1341, that defendant Mandel "would and did, both personally and through agents, in return for certain financial and other benefits . . . act with intent to aid and assist certain legislation and legislative matters financially beneficial" to the other codefendants in their capacities as alleged owners of the Marlboro Race Track. Defendant Mandel argues that the Maryland Constitution allocates to him as Governor certain legislative functions, among them the discretionary power to recommend legislative matters for the consideration of the General Assembly and the power to approve and veto bills passed by the legislature.[7] To the degree that he so participates in the legislative process, defendant Mandel argues that he is entitled to invoke legislative privilege

---

6. Thus the Court has denied legislative immunity to such acts of a legislator as arranging for the private republication of Congressional committee proceedings (*Gravel v. United States, supra*), and attempts to influence government officials in another branch of government (*United States v. Johnson, supra*), and has indicated that a wide variety of "political" activities commonly engaged in by legislators are beyond the scope of speech or debate immunity. (*United States v. Brewster, supra,* 408 U.S. at 512, 92 S.Ct. at 2537, 33 L.Ed.2d at 517.)

7. Art. II, § 17 of the Maryland Constitution confers upon the Governor a review and veto power "to guard against hasty or partial legislation and encroachment of the Legislative Department upon the co-ordinate Executive and Judicial Departments." Art. II, § 19 provides that the Governor "shall, from time to time, inform the Legislature of the condition of the State and recommend to their consideration such measures as he may judge necessary and expedient."

to forbid inquiry into his legislative acts or the motivation behind them.

It can scarcely be questioned that the functions of approving or vetoing bills and recommending matters for legislation would, if performed by a legislator or the legislature, be legislative acts entitled to protection under the doctrine of legislative immunity. Nor can it be doubted that the states under our federal scheme have, within broad constitutional limits, the exclusive power to allocate the functions of the executive, judicial, and legislative powers as they wish.[8] But neither of those observations settle the question whether legislative immunity attaches to legislative acts performed by someone not in the legislative branch.

To answer that question, it is necessary to recall the purposes of the doctrine of legislative immunity: (1) to encourage the vigorous performance of legislative duties by shielding legislators from distracting civil suits; and (2) to maintain the independence of the legislature by shielding legislators from criminal prosecution for legislative acts by an unfriendly executive and conviction before a hostile judiciary.

In the instant case, the rationale for immunity from criminal prosecution is wholly lacking. While the chief executive officer is not immune from threats of criminal prosecution by his own branch, cf. *United States v. Nixon, supra,* 418 U.S. 692–697, 94 S.Ct. at 3100–3102, 41 L.Ed.2d at 1054, such a prosecution simply does not pose the separation of powers conflict that is the basis for the immunity. The executive has no reason to fear for its independence as a co-equal branch of government as a consequence of any criminal prosecution brought by itself. With the exception of the impeachment power which is conferred upon the House of Delegates by Art. III,

§ 26 of the Maryland Constitution, the legislature and the judiciary are without power to institute and prosecute criminal-type proceedings which could intimidate the executive and control the performance of the executive's legislative duties.

Similarly, a criminal prosecution of a chief executive officer based on that officer's legislative acts does not threaten the independence of the legislature. No legislator is here being called upon to explain his acts before a "hostile judiciary" as a consequence of a prosecution brought by an "unfriendly executive"; no acts of any legislator or of the legislature itself are being called into question. The only alleged legislative acts before the Court are those of the Governor.

That is not to say, of course, that exposing the executive to criminal liability for his legislative acts does not indirectly affect the legislative process; it is merely to say that it does not interfere with the *due* functioning of the legislative process, *United States v. Brewster, supra,* 408 U.S. at 515–516, 92 S.Ct. at 2539, 33 L.Ed.2d at 519, and that it does not threaten the independence of the legislature.

Defendant Mandel also argues, however, that considerations of federalism require the Court to apply the privilege even in the absence of any separation of powers problem, citing the recent Seventh Circuit decision in *United States v. Craig,* 528 F.2d 773 (1976), *petition for cert. filed February 26, 1976 sub nom. Markert v. United States,* 44 USLW 3502. Two of the three judges in that case held that a state legislator was entitled to invoke the common law legislative immunity doctrine to bar the introduction into evidence of his legislative acts in a federal criminal prosecution under the Hobbs Act and the Mail Fraud Act, 18 U.S.C. § 1951 and § 1341, respectively. In

---

**8.** The kind of freedom to experiment with a variety of governmental forms given to states by the Framers may be gleaned from a reading of Federalist No. 47, in which Madison reviewed the existing varieties of allocations of the executive, judicial, and legislative functions in the thirteen states. In some of the states the chief executive officer was a voting member of the state legislature; in others, he was permitted to vote to break a tie; in others, he had no voting power but had a veto power. The Court, of course, expresses no opinion as to the applicability of the doctrine of legislative immunity in any other context other than that presented by the present case.

rejecting the government's contention that the privilege should be applicable only in cases involving coequal branches of government, and not in prosecutions brought by the federal executive against a state legislator, the Court noted:

Although the speech or debate privilege embraces notions of the separation of powers among co-equal branches of government, its primary message is that legislatures must be able to discharge their lawful responsibility in an atmosphere free from the threat of interference by other governmental units. A legislator in considering whether to support or oppose a proposed law must be free to reflect on the merits; he must not be deterred from advocating a position by the threat of prosecution by a hostile executive. The evil is the fact of deterrence; whether the threat emanates from the local or national executive makes no difference.

*United States v. Craig, supra,* at 778.

■ Whatever the merits of the argument as it applies to federal criminal prosecutions of state legislators, it is clear that principles of federalism do not require the privilege to be applied in federal criminal prosecutions of a state executive officer. *Craig* merely reaffirms the role of the privilege in protecting the independence of legislatures; as noted previously, that consideration is totally absent where the criminal defendant is the chief executive officer of the state.

It seems clear that the point of the defendant's "federalism" argument is aimed, not at the threat to the independence of the legislature posed by this prosecution, but at the threat of federal control and intimidation over the discretionary acts of the Governor undertaken in the course of his official duties. This argument, however, is nothing more than an invocation of the purpose common to all forms of official immunity: to shield government officials from suits which could discourage the "fearless, vigorous, and effective administration of policies of government." *Barr v. Mateo, supra,* 360 U.S. 564, 571, 79 S.Ct.

1335, 1339, 3 L.Ed.2d 1434, 1441 (1959). As compelling as the argument is for the application of the privilege in a civil context, as far as the Court is aware, the doctrine of official immunity has never been extended to protect officials against criminal prosecutions. In *Gravel v. United States, supra,* the Supreme Court rejected the attempt of the Court of Appeals below to cloak Senator Gravel and his aide with official immunity from criminal prosecution arising from the private republication of the Pentagon Papers. The Court criticized the Court of Appeals' approach, stating:

But we cannot carry a judicially fashioned privilege so far as to immunize criminal conduct proscribed by an Act of Congress or to frustrate the grand jury's inquiry into whether publication of these classified documents violated a federal criminal statute. The so-called executive privilege has never been applied to shield executive officers from prosecution for crime.

408 U.S. at 627, 92 S.Ct. at 2628, 33 L.Ed.2d at 603. In the more recent case of *Imbler v. Pachtman, supra,* in which the Court afforded a state prosecutor "absolute immunity" from civil suits under the official immunity doctrine, the Court noted:

This Court has never suggested that the policy considerations which compel civil immunity for certain governmental officials also place them beyond the reach of the criminal law. Even judges, cloaked with absolute civil immunity for centuries, could be punished criminally for willful deprivations of constitutional rights on the strength of 18 U.S.C. § 242 . .

424 U.S. at 429, 96 S.Ct. at 994.

■ The fact that this is a criminal prosecution of a state executive officer distinguishes this case from the cases cited by the defendant as authority for the proposition that the protection of legislative immunity is applicable to executive officials. In *Eslinger v. Thomas, supra,* the Fourth Circuit held that the defendant Lieutenant Governor of South Carolina (in his capacity as President ex-officio of the state senate),

the defendant President Pro Tempore of the state senate, and the defendant state senators were all immune from suit brought by a female law student under 42 U.S.C. § 1983 for denying her employment as a page solely because of her sex. The extension of the doctrine of official immunity to an executive officer performing legislative functions was hardly remarkable. But *Eslinger* simply did not address itself to the issue whether such immunity was available in criminal proceedings, and therefore, cannot be cited as authority in the present case.

Similarly, in the case of *Saffioti v. Wilson*, 392 F.Supp. 1335 (S.D.N.Y.1975), a plaintiff brought a civil rights action against the Governor of New York to review the veto by the Governor of a piece of private legislation which had been intended to aid the plaintiff. The Court dismissed the complaint after finding that the Governor had acted neither arbitrarily or capriciously. In a footnote, the Court noted in a dictum that similar actions in the future might be barred by the doctrine of legislative immunity. 392 F.Supp. 1343 n. 10. Such dictum can hardly stand as authority for the proposition that legislative immunity protects an executive officer from criminal prosecution for legislative acts performed in the course of official duties.

For all of the above reasons, the Court is of the opinion that the denial of the privilege afforded by the doctrine of legislative immunity under the circumstances of this case will not contravene the purposes behind the privilege. The Court is aware of no significant public interest which would be served by the recognition of the privilege in this criminal proceeding. Accordingly, the Court finds that defendant Mandel is not entitled to invoke legislative privilege or immunity in this proceeding.